Argued September 18, reversed and remanded November 21, 1978,
reconsideration denied January 23, Sup Ct review allowed
May 22, 1979, 286 Or 449

## STATE OF OREGON, *Appellant,*
### *v.*
## NEIL CLAIR RATHBUN, *Respondent.*
### (No. C 77-06-07805, CA 10265)

586 P2d 1136

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Stephen A. Houze, Portland, argued the cause for respondent. With him on the brief was Lois J. Portnoy, Portland.

Jeffrey L. Rogers, Portland, filed a brief amicus curiae for American Civil Liberties Foundation of Oregon, Inc.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

■ The issue in this case is whether there is a constitutional bar to retrial upon double jeopardy grounds where, during the course of the first trial, the bailiff made improper remarks to the jury. We hold that, under the facts of this case, there is no bar.

Defendant was tried on a charge of First Degree Robbery, ORS 164.415, in a three-day trial which began on October 4, 1977. The jury retired to deliberate at noon on October 6. They were sequestered overnight by the court and returned to continue deliberations on the morning of October 7. As of noon that day, it became apparent that the jury was deadlocked. The trial court declared a mistrial and ordered a new trial.

Later that evening, two of the 12 jurors in the case reported to the district attorney that the trial court bailiff had made a number of remarks to the jury during recesses in the trial and during the deliberations which were of questionable propriety. Hearings were held on October 13 and 18, 1977, to inquire of the jurors what comments they might have heard and what effect the bailiff's comments might have had on their deliberations. Eight jurors testified that they had heard the bailiff comment about such matters as the sentencing practices of the judge who was sitting on the case, the penalties for armed robbery and the bailiff's own recommendation that the jurors take the time to ride in a patrol car with an officer "for the educational benefit." While each of the eight jurors indicated that the bailiff's comments had not influenced his or her own vote, at least two of the jurors felt that the remarks were very prejudicial to the defendant and might have influenced other members of the jury.

■ Based on the jurors' testimony as to the conduct of the bailiff, defendant moved to dismiss the case on grounds of double jeopardy. A hearing was held on

that motion and the trial judge made the following pertinent findings of fact:

1. The bailiff's improper remarks[1] necessitated the declaration of a mistrial;

2. The bailiff was an officer of the court and breached her statutory duty in making the remarks;

3. The error made by the bailiff was motivated by bad faith or prejudice and could not be attributed to mere negligence.

The judge held that a second trial was barred by the double jeopardy clause. Historical findings of fact by the trial court are conclusive and will not be overturned on appeal. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The constitutional impact of those findings, however, are for the reviewing court to assess. *State v. Warner,* 284 Or 147, — P2d —— (1978).

■ The double jeopardy clause protects a criminal defendant from the substantial burdens imposed by multiple prosecutions. In so doing it embraces two sometimes competing policy considerations: a defendant's "valued right to have his trial completed by a particular tribunal" and "the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 US 684, 689, 69 S Ct 834, 93 L Ed 974 (1949). While ideally these two policies comfortably coexist, in some instances the first must be subordinate to the second. *Wade v. Hunter, id* at 689. *Arizona v. Washington,* — US —, 98 S Ct —, 54 L Ed 2d 717 (1978).

Guidelines used by the courts in determining when a second prosecution is proper are designed to accommodate these two policies. On the one hand, the Supreme Court has held that where a first trial has been terminated without the defendant's request or consent, retrial will be barred unless the termination

---

[1]Technically, the mistrial was required by the hung jury. However, we think the trial judge's finding that improper remarks "necessitated" the mistrial is correct if we assume, as we do, the intermediate step that the improper remarks were responsible for the hung jury.

of the trial or declaration of mistrial was prompted by "manifest necessity." *Arizona v. Washington, supra.; Illinois v. Summerville,* 410 US 458, 93 S Ct 1066, 35 L Ed 2d 425 (1975); *United States v. Perez,* 22 US (9 Wheat.) 579 (1824). *See also State v. Cole,* 37 Or App —, — P2d — (1978); *State v. Embry,* 19 Or App 934, 530 P2d 99 *rev den* (1975). On the other hand, it is ordinarily assumed that there is no bar to retrial where the mistrial is granted at defendant's request. *United States v. Dinitz,* 424 US 600, 606-08, 96 S Ct 1075, 47 L Ed 2d 267, 273-74 (1976). *United States v. Jorn,* 400 US 470, 485, 91 S Ct 547, 27 L Ed 2d 543, 556 (1971). But, if the circumstances resulting in the declaration of mistrial are attributable to prosecutorial overreaching or judicial misconduct, retrial will generally be barred in even this latter case. *See Jorn, supra,* at 489 n 12. *Downum v. United States,* 372 US 734-736, 10 L Ed 2d 100, 83 S Ct 1033 (1963). As stated by the Supreme Court in *Dinitz, supra:*

> "The Double Jeopardy Clause does protect the defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. *It bars retrials where 'bad faith' conduct by judge or prosecutor,* (citations omitted) *threatens the '[h]arassment of an accused by successive prosecutions or declaration of a mistrial* so as to afford the prosecution a more favorable opportunity to convict' the defendant. *Downum v. United States,* 372 US at 736. *See Gori v. United States,* 367 US at 369; *United States v. Jorn, supra,* at 489 (Stewart, J., dissenting); *cf. Wade v. Hunter,* 336 US at 692." *Dinitz* at 611. (Emphasis added).

■ The bailiff's improper conduct contaminated the jury's deliberations in violation of defendant's constitutional rights and necessitated the declaration of a mistrial. *Parker v. Gladden,* 385 US 363, 87 S Ct 468, 17 L Ed 2d (1966). The issue here is whether the bad faith conduct of the bailiff can be translated into bad faith conduct on the part of the judge. Defendant insists that this case presents an example of such "bad

[ 263 ]

faith conduct" by the judge which must bar retrial as required by the language in *Dinitz* and *Jorn.*

We think however that this case bears a closer resemblance to those cases involving juror bias than those cases involving judicial misconduct. *See e.g., Thompson v. United States,* 155 US 271, 274, 15 S Ct 73, 39 L Ed 146 (1894); *Simmons v. United States,* 142 US 148, 12 S Ct 171, 35 L Ed 968 (1891); *Whitefield v. Warden,* 486 F2d 1118 (4th Cir 1973), *cert den,* 419 US 876 (1974); *Smith v. Mississippi,* 478 F2d 88 (5th Cir) *cert den,* 414 US 1113 (1973); *See also,* S. Schulhofer, Jeopardy and Mistrials, 125 U Pa L Rev 449, 475-78 (1977). In each of these cases, after the jury had been empaneled and sworn, the trial judge was notified that one or more of the jurors had been exposed to information which might have biased the jurors and render improbable an impartial verdict. And in each case, the judge's decision to declare a mistrial was upheld and retrial permitted. The thread that runs common to these cases is that the events resulting in the possible juror bias are wholly beyond the control of the judge or prosecutor. Accordingly, retrial is permitted because no danger exists that the mistrial problem was triggered by prosecutorial or judicial desire to harass the defendant or afford the prosecution a more favorable opportunity to convict.

There is nothing in the record to suggest that the improper conduct of the bailiff in this case was in any way condoned or acquiesced in by the trial judge, *i.e.,* there is nothing to suggest that the bailiff's conduct was attributable to any bad faith conduct on the part of the judge. We will not assume it. We have, then, a bailiff who chose on her own to violate her obligations as a bailiff and officer of the court.[2] For purposes of

---

[2] ORS 1.025(1) provides:

"Where a duty is imposed by law upon a court, or upon a judicial officer, clerk, bailiff, sheriff, constable or other officer, which requires or prohibits the performance of an act or series of acts in matters relating to the administration of justice in a court, it is the duty of the

double jeopardy analysis, the rationale which justifies barring retrial does not reach so far as to include a case such as this.

Reversed and remanded.

judicial officer or officers of the court, and each of them, to require the officer upon whom the duty is imposed to perform or refrain from performing the act or series of acts."

ORS 1.025(2) applies the requirements of subsection (1) to ORS 17.305.

ORS 17.305 provides:

"After hearing the charge, the jury may either decide in the jury box or retire for deliberation. If they retire, they must be kept together in a room provided for them, or some other convenient place, under the charge of one or more officers, until they agree upon their verdict or are discharged by the court. The officer shall, to the utmost of his ability, keep the jury together, separate from other persons, without drink, except water, and without food, except ordered by the court. He must not suffer any communication to be made to them, nor make any himself, unless by the order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed on. Before any officer takes charge of a jury, this section shall be read to him, and he shall be then sworn to conduct himself according to its provisions to the utmost of his ability."