Argued and submitted July 2, reversed September 25, 1979

# STATE OF OREGON,
*Respondent,*

*v.*

# NEIL CLAIR RATHBUN,
*Petitioner.*

## (TC C 77-06-07805, CA 10265, SC 26021)
### 600 P2d 392

Lois J. Portnoy, Portland, argued the cause for petitioner. With her on the brief was Stephen A. Houze, Portland.

Robert C. Cannon, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Walter L. Barrie, Solicitor General, and Donald L. Paillette, Assistant Attorney General, Salem.

Jeffrey L. Rogers, American Civil Liberties Foundation of Oregon, Inc., Portland, filed a brief of amicus curiae in the Court of Appeals.

LENT, J.

**LENT, J.**

The issue in this case is whether a mistrial resulting from a bailiff's misconduct is a bar to retrial of the defendant. We find it is in the circumstances of this case.

The record discloses that trial of defendant on charges of first degree robbery (armed with a firearm) commenced on Tuesday, October 4, 1977, and that the case was submitted to the jury at midday on Thursday, October 6. The jury was unable to agree by nighttime and was sequestered for the night under the charge of the bailiff. The bailiff took the jury to breakfast on the morning of Friday, October 7, and thereafter the jury returned to the jury room and deliberated until late forenoon. The jury then informed the trial judge that it was at an impasse. Defendant's motion for a mistrial was allowed. According to a stipulation of facts two of the jurors on that evening (which was the last day of the jury term) went to the district attorney and advised him "about comments which were made by the court's bailiff to the jury during recesses in the trial and during the deliberations." Six days later in the presence of counsel the jurors were individually interrogated by another circuit judge concerning the bailiff's conduct and its effect on the jurors.

Thereafter on the basis of the stipulation and the transcript of interrogation defendant moved to dismiss the case on grounds of former jeopardy, ORS 135.470. Yet another circuit judge heard the motion on January 9, 1978, and ordered that the motion for dismissal be allowed and that the indictment be dismissed. The state appealed, ORS 138.060(1), and the Court of Appeals reversed, 37 Or App 259, 586 P2d 1136 (1978). We allowed defendant's petition for review, 286 Or 449 (1979).

■ The state argues that there is no causal relationship between the concededly improper remarks of the bailiff and the inability of the jury to agree upon a

verdict. We must dispose of that matter, for otherwise what we posed as the issue at the outset of this opinion is flawed.

The transcript of proceedings upon judicial interrogation of the jurors discloses that eight of the jurors overheard at least part of the bailiff's remarks concerning sentencing habits of the trial judge where a gun is involved, the range of sentences for robbery and the knowledge of the criminal element of society to be realized by riding in a patrol car with an officer. There is evidence that the bailiff's remarks were made on several occasions during the course of the trial, and one juror left the jury room during one recess to escape the bailiff's discourse upon the subjects above noted. It was stipulated by the parties that the bailiff was experienced and had had charge of juries on numerous criminal cases and that the trial judge had not ordered the bailiff to make these communications to the jury. (The state concedes that these remarks were "improper.") Seven of the eight denied that the remarks influenced his or her vote, but two of the jurors opined that the remarks were very prejudicial to the defendant's cause and might have influenced other jurors. One juror conceded that she might have been influenced by the remarks. She also testified that "it got pretty hostile" during deliberations and that other jurors accused her of just being "young and innocent" and suggested that she should go out and ride in a police car to get an insight "on those things." The record also discloses that the jury was particularly concerned with the weight to be given to eyewitness evidence and the matter of reasonable doubt as to defendant's guilt.

The motion judge found that the bailiff's conduct was not attributable to mere negligence. He found rather that she was motivated by "bad faith or prejudice" against the defendant.[1] Moreover he found that she violated her oath of office and her statutory duty. He apparently had reference to ORS 17.305:

---

[1] We read his words to mean that he treated the terms synonymously.

"After hearing the charge, the jury may either decide in the jury box or retire for deliberation. If they retire, they must be kept together in a room provided for them, or some other convenient place, under the charge of one or more officers, until they agree upon their verdict or are discharged by the court. The officer shall, to the utmost of his ability, keep the jury together, separate from other persons, without drink, except water, and without food, except ordered by the court. He must not suffer any communication to be made to them, nor make any himself, unless by the order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed on. Before any officer takes charge of a jury, this section shall be read to him, and he shall be then sworn to conduct himself according to its provisions to the utmost of his ability."

There is evidence from which he could have so found; therefore, we treat those matters as established. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968).

The state argues, however, that there is no causal relationship between the bailiff's misconduct and the mistrial, because each and every juror upon interrogation denied being influenced by the bailiff's remarks. In *State v. Kristich*, 226 Or 240, 251-253, 359 P2d 1106 (1961), we rejected the rule that to obtain a new trial the defendant must show prejudice against him resulting from a bailiff's misconduct of the kind with which we here deal and, having done so, said, 226 Or at 252-253:

"Our statute, ORS 17.305, specifically enjoins the bailiff from making any communication with the jury, except to inquire if they have reached a verdict. The Supreme Court of Wisconsin has held in *State v. Cotter*, 1952, 262 Wis 168, 54 NW2d 43, 41 ALR 2d 222, a similar case to this one, that prejudice will be presumed and a new trial ordered when it appears that the bailiff has improperly communicated to the jury. The same rule has been followed in Georgia. *King v. The State*, 1955, 92 Ga App 616, 89 SE2d 585.

Cases are cited by the state from other jurisdictions which hold that a new trial will not be granted unless prejudice is shown to the defendant. The state would have us hold that defendant must show prejudice. We think that is not the best rule and has not been followed by this court. As recently as October 26, 1960, in *Thomas v. Dad's Root Beer*, 225 Or 166, 356 P2d 418, this court, speaking by Justice Howell, said: 'Under the circumstances, therefore, we cannot say that it is clear that the "misconduct could not and did not influence the verdict." [citing cases]'

"In a felony case, particularly where the penalty, as here, can be of long duration, the greatest of care should be exercised to obtain a fair trial. The rule should be inviolate that the jury can consider only such evidence and instructions that it receives in the courtroom. *A court cannot attempt to speculate by some method of mind reading to know whether the bailiff's conduct actually influenced the mental process of any of the jurors.* Admittedly, the statements made were improper. That some of the jurors thought it was said in a humorous vein was immaterial. The same issue was made in the Wisconsin and Georgia cases. Humor can influence as readily as seriousness. When the members of the jury were in obvious doubt it is hard to say that the false belief that they had to reach a verdict did not influence one of the ten who voted for guilt. When we are in doubt the issue should be resolved in favor of the accused. The judgment must be reversed and a new trial ordered." (Emphasis added)

*See also, Thomas v. Dad's Root Beer, Etc.,* 225 Or 166, 172, 356 P2d 418, 357 P2d 418 (1960), in which we indicated that even in a civil case it must be "clear" that improper communications to the jury did *not* influence the jury.

We now hold that with respect to the bailiff's misconduct shown in this case we shall assume, without proof, that there is a causal relationship between the misconduct and the mistrial.

■ The motion judge concluded that the bailiff was an officer of the court and of the state. For this he relied

upon *Parker v. Gladden,* 385 US 363, 87 SCt 468, 17 LEd2d 420 (1966), in which the United States Supreme Court, in a case involving bailiff misconduct similar to this, found an Oregon circuit court bailiff to be an officer of the court and the state for the purposes of a Sixth/Fourteenth Amendment analysis. We do not find that to be binding upon us in this case; nevertheless, we are persuaded that the bailiff in this case for the purpose of our analysis of the double jeopardy issue is at least an officer of the court. We think this fairly follows from the language of ORS 17.305, *supra,* and from ORS 1.025(1):

> "Where a duty is imposed by law upon a court, or upon a judicial officer, clerk, bailiff, sheriff, constable or other officer, which requires or prohibits the performance of an act or series of acts in matters relating to the administration of justice in a court, it is the duty of the judicial officer or officers of the court, and each of them, to require the officer upon whom the duty is imposed to perform or refrain from performing the act or series of acts."

We, therefore, agree with the motion judge's conclusion of law in this respect.[2]

■ ■ Defendant cited in support of his motion ORS 131.515(1), Article I, section 12, of the Oregon Constitution, and Amendments V and VI of the United States Constitution as made applicable to the states by Amendment XIV. They provide, respectively, as pertinent to this case:

> "Except as provided in ORS 131.525 * * *
> "(1) No person shall be prosecuted twice for the same offense." ORS 131.515(1)
> "No person shall be put in jeopardy twice for the same offence * * *." Or Const Art I, § 12.
> "* * * nor shall any person be subject for the same offence to be twice put in jeopardy * * *." US Const Amend V.

---

[2] In oral argument in this court the state conceded that the bailiff is an officer of the court.

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." US Const Amend VI.

We are unable to dispose of the case upon the basis of ORS 131.515(1)[3] alone, for the state points out that subsection is subordinate to ORS 131.525, which provides in the part deemed pertinent by the state:

"A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was properly terminated under any of the following circumstances:

"* * * * *

"(2) The trial court finds that a termination, other than by judgment of acquittal, is necessary because:

"* * * * *

"(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the state; or

"(d) The jury is unable to agree upon a verdict;

"* * * * *."

We find subparagraph (2)(c) to be inapplicable by its terms for the trial court did not find it necessary to terminate the trial other than by judgment of acquittal because of the bailiff's prejudicial conduct. On the other hand, subparagraph (2)(d) is in point because that is what the trial court did do. It follows that this subparagraph makes ORS 131.515(1) inoperative unless we can say that it cannot be constitutionally applied in this peculiar situation.

Both parties concede there is no case directly in point under either the United States or Oregon Constitution. Each party argues by analogy from cases involving other fact situations, and each, of course,

---

[3] Although defendant cited ORS 131.515(1) as authority for his motion, we are unable to discover in the record that he ever *argued* the statute in his circuit court memorandum of law, his brief in the Court of Appeals, or his petition for review in this court. He primarily argued the United States Constitution and United States Supreme Court cases interpreting that document.

analogizes this case to favorable decisions and language from those cases. Defendant contends that this case should be analyzed as if it were a case of judicial misconduct, while the state finds a likeness to those cases in which the jury is contaminated by the misconduct of someone other than the prosecutor or the judge.

The Court of Appeals considered that this case bore "a closer resemblance to those cases involving juror bias than those cases involving judicial misconduct." 37 Or App at 264. The Court of Appeals directed attention to a line of federal court cases and then commented (37 Or App at 264):

"* * * In each of these cases, after the jury had been empaneled and sworn, the trial judge was notified that one or more of the jurors had been exposed to information which might have biased the jurors and render[ed] improbable an impartial verdict. And in each case, the judge's decision to declare a mistrial was upheld and retrial permitted. The thread that runs common to these cases is that the events resulting in the possible juror bias are wholly beyond the control of the judge or prosecutor. Accordingly, retrial is permitted because no danger exists that the mistrial problem was triggered by prosecutorial or judicial desire to harass the defendant or afford the prosecution a more favorable opportunity to convict."

The court went on to note that there was nothing in the record to suggest that the improper conduct of the bailiff could be attributed to the trial judge[4] and concluded (37 Or App at 264-265):

"* * * We have, then, a bailiff who chose on her own to violate her obligations as a bailiff and officer of the court [citing ORS 1.025(1) and 17.305, *supra*].

---

[4] Defendant argues that the judge failed in his own responsibilities enjoined upon him by ORS 1.025(1) (set forth, *supra*, in the body of this opinion) and under the Code of Judicial Conduct, the American Bar Association's "Standards Relating to the Function of the Trial Judge," and the "State Trial Judge's Book" published under the sponsorship of the National Conference of State Trial Judges. We heed not this argument, for there is nothing in the record to make us of the mind that the trial judge was derelict in this case with respect to any of the matters with which that statute and those "authorities" are concerned.

For purposes of double jeopardy analysis, the rationale which justifies barring retrial does not reach so far as to include a case such as this."

The case law background of the Court of Appeals' decision is that of the United States Supreme Court dealing with the Double Jeopardy Clause of the United States Constitution. No one disputes that a purpose to be served by a constitutional or statutory double jeopardy clause is to prevent repeated attempts to convict a person for the same offense "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. * * * ." *United States v. Jorn*, 400 US 470, 479, 91 S Ct 547, 27 LEd2d 543 (1971). Nor should there be any dispute as to the defendant's "valued right to have his trial completed by a particular tribunal" once trial has begun. *Wade v. Hunter*, 336 US 684, 689, 69 S Ct 834, 93 LEd 974 (1949). These considerations must bow, however, to the sense of the rule formulated in the early case of *United States v. Perez*, 9 Wheat. 579, 6 LEd 165 (1824), providing that the attachment of jeopardy is anulled if the prior prosecution is terminated because "there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *See also, Arizona v. Washington*, 434 US 497, 98 S Ct 824, 54 LEd2d 717 (1978), and *State v. Cole*, 286 Or 411, 595 P2d 466 (1979).

The premises arising from *Jorn* and *Wade* were reaffirmed in *United States v. Dinitz*, 424 US 600, 611, 96 S Ct 1075, 47 L Ed 2d 267 (1976), where the court noted the special treatment of the situation involving judicial or prosecutorial misconduct:

"The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' *United States v. Jorn, supra,* at 485, threatens the '[h]arassment of an

accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant."

The rationale is that if by prosecutorial or judicial misconduct the government puts the defendant to the "Hobson's choice" of either moving for a mistrial or continuing with a jury which was, arguably, favorably disposed to the defendant but is now contaminated by the misconduct, the defendant's right to complete the trial before the original tribunal outweighs the public's interest in convicting the guilty.

We agree with the Court of Appeals that this is not a case in which the mistrial was "triggered by prosecutorial or judicial desire to harass the defendant or afford the prosecution a more favorable opportunity to convict." 37 Or App at 264. We further agree that this is a case of an officer of the court who, on her own, was guilty of improper conduct which caused the mistrial in question. We cannot agree that the want of prosecutorial and judicial misconduct leaves the case in the same situation in which jury contamination resulting from ordinary third party misconduct causes a mistrial and is, therefore, no bar to retrial.

In other words, the mere happenstance that the case does not fit the judicial misconduct exception to the rule of *United States v. Perez, supra,* is not dispositive. Before that particular exception was carved out by the courts, it most obviously did not exist. The question before us is whether we should now announce another exception embracing the facts of this case.

It seems that there is little to be gained by our attempting to guess what the United States Supreme Court might do under the Constitution of the United States if this case were before that court. We shall dispose of this case under Oregon law although giving proper weight to the statements of United States

[431]

Supreme Court which we find to touch upon the matter.[5]

ORS 131.525(2)(d), *supra*, does, by its literal terms, apply to the case of a mistrial arising from the inability of a jury to agree upon a verdict and in the ordinary case would, therefore, annul the attachment of jeopardy arising from the original trial.[6] Undisputably, however, a first trial is a bar to a second where a mistrial is declared because of prosecutorial or judicial misconduct. It follows that if a hung jury results from such misconduct and the misconduct is only later discovered and established, a second trial would not be permitted simply because the misconduct was hidden from the defendant until it manifested itself in the inability of the jury to agree upon a verdict.

In the United States Supreme Court decisions cited by the parties concerning prosecutorial or judicial misconduct the misconduct was perpetrated for the very purpose of triggering a motion by the defendant for a mistrial. Here there is nothing to suggest the bailiff sought to cause a mistrial. We daresay that nothing was further from her mind than causing a hung jury by her prejudicial discourse. On the contrary, her apparent purpose, as appears from the motion judge's findings, was to assist the state in securing a conviction.

The misconduct by this bailiff is so abhorrent to the sense of justice that we find the same sanction is required to effectuate the constitutional command as

---

[5] *Compare, State v. Sims,* 287 Or 349, 599 P2d 461 (1979); *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 98, n. 1, 570 P2d 52 (1977); *Olsen v. State ex rel Johnson,* 276 Or 9, 16, 554 P2d 139 (1976); *Deras v. Myers,* 272 Or 47, 64, 535 P2d 541 (1975); *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972); *Dickman et al v. School Dist. 62C et al,* 232 Or 238, 243, 366 P2d 533 (1962) (" * * * [W]e have chosen to decide the issues presented in this case solely upon the basis of the Oregon Constitution.")

[6] The state's reliance upon *State v. Jones,* 240 Or 546, 548, 402 P2d 738 (1965), is misplaced. The rule there stated is applicable only when jeopardy "is properly annulled for any reason." The state begs the question, for here we are determining whether jeopardy has been properly annulled.

in the case where the prosecutor or the judge intends to provoke a mistrial. The state put this officer of the court in the position to wreak havoc and must bear the same burden as when its prosecutor or judge in like manner offends.[7]

We hold that Article I, section 12, of the Oregon Constitution prevents the application of ORS 131.525(2)(d) in these circumstances. That being so, ORS 131.515(1) bars the retrial of the defendant.

The decision of the Court of Appeals is reversed.

---

[7] We suggest that every trial judge in this state bring this decision to the attention of his or her bailiff and to any pro tem bailiff serving the court. In like vein we implore the trial judges to give heed to ORS 1.025(1) and to the American Bar Association Standards Relating to the Function of the Trial Judge (1972), Standard 2.4:

> "The trial judge has the *duty* to have the courtroom personnel properly instructed in the performance of their duties, * * * ." (Emphasis added)