MR. JUSTICE SHEEHY,
dissenting:
I dissent to the opinion of the majority on rehearing, as I dissented to the original opinion in this case. Because the majority in its decision on rehearing has shifted ground to some extent in its ratio *501 decidendi on the issues presented here, I must again set forth at length my objections to the majority opinion.
The length of this dissent is required in part because of the inadequate discussion of the applicable law in the majority opinion. It is a matter of concern amounting nearly to embarrassment, but not deterrence, to those of us who have differing philosophies of criminal justice and constitutional rights from the majority, that we must resort in dissent to what must appear to the press and the public to be carping over trivialities. Yet these trivialities, as the majority apparently regards them, are of momentous significance to the individuals involved. Here, Forsyth will be subjected to a third trial from which, under our state constitution, he ought to be insulated.
I turn my attention first to the issue of double jeopardy. In its original opinion, the majority refused to grant supervisory control under our state procedure, saying that “the remedy of a criminal defendant lies in an appeal following conviction, or in a post-conviction proceeding.” The majority relied on State ex rel. LaFlesch v. District Court (1974), 165 Mont. 302, 306, 529 P.2d 1403, 1405, to reach that conclusion. The decision of this Court in LaFlesch is invalid now under federal law because of a decision in Abney v. United States (1977), 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651.
In Abney, the United States Supreme Court determined that a pretrial order in the federal district court denying a motion on double jeopardy grounds was reviewable on appeal under federal appellate practice before the defendant could be put to the burden of a second trial, saying:
“However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense.” 431 U.S. at 660-1, 97 S.Ct. at 2014, 52 L.Ed.2d at 661.
As I said, the majority has now shifted away from its original holding that Forsyth must undergo a second trial and then appeal if he is convicted in order to have the double jeopardy claim reviewed. Instead, in its opinion on rehearing, the majority nimbly jumped to Oregon v. Kennedy (1982), 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 to find that on the jury tampering issue here Forsyth has not brought himself in the exception allowed in Oregon v. Kennedy. Unexplained by the majority is how Oregon v. Kennedy, which applies to prosecutorial malfeasance, applies to jury tampering by a bailiff, a much different situation.
*502 The majority has also shifted its view as to how it will regard the flagrant abuses by the bailiff in this case. In its original opinion here, the majority seemingly agreed with the District Court in concluding that “none of the actions complained of was motivated by a desire or an attempt by the bailiff to influence the jurors’ perception of the trial or to affect the jury’s deliberations of decision-making, and that none of the bailiff’s comments influenced the attitude, perception or ultimate judgment of any juror.”
In their opinion on rehearing however, the majority concludes that the comments of the bailiff “could have at most been construed as an attempt to assist the State in obtaining a conviction,” as if that were permissible.
The comments that the bailiff made to the jury “to assist the State in obtaining a conviction” were these:
1. Following the testimony of Debbi Neff, a former girlfriend of Forsyth, the bailiff told members of the jury that she must have been drugged to testify, that ‘you should see in her medicine cabinet,’ implying that she was a drug abuser, and that she had nearly ‘blown it’ at the first trial.
2. On another occasion during the trial, the bailiff told members of the jury T can say just one word and it would remove all doubt from your mind.’
3. While the court and counsel were in chambers during the course of the trial, and the jurors were curious about what was going on in chambers, the bailiff stated that the county attorney, or the county attorney and defense counsel, or the judge and the attorneys would come in after the trial ‘and tell you all the things you didn’t get to know during the trial and he would answer your questions.’ One of the jurors stated that she feared during deliberations that if she voted not guilty and then the county attorney came in and told her about important evidence that had been suppressed, she was concerned that later she would believe she had voted the wrong way.
4. The bailiff informed members of the jury that his son was member of the Kalispell police department which was involved in the prosecution of the action against Forsyth.
5. During the lengthy days’ cross-examination of the State’s principal witness by defense counsel, the bailiff made the remark on several occasions to members of the jury ‘we know who is getting paid by the hour,’ imputing deliberate delay to court appointed defense counsel.
6. During the trial, when distributing to the jurors their first ex *503 pense checks, the bailiff told the jury that the cost of the trial to the State had already reached $6,000.
7. The bailiff pointed out to the jurors the parents of the victim who were seated in the courtroom.
8. When the jurors went to the scene of the crime, they were told by the bailiff to stay together because ‘they were afraid that something would happen or some comment would be made that they would get a retrial.’
9. The jurors wanted to send a Christmas gift to one of the witnesses, Norman Calvert, and Bourne, the bailiff, volunteered to ask his son, as a member of the Kalispell Police Department to insure that Calvert received it.
10. The jury began deliberating the case after it was submitted to it on New Year’s Eve, December 31, 1982. Bourne told the jury that the Flathead County jury in the earlier case had deliberated for approximately 8 hours and that therefore the jurors in this case might anticipate reaching a conclusion in time for a ‘Happy New Year.’
In their original opinion, the majority found “substantial evidence to support the District Court’s findings” that the bailiff’s remarks had no effect on the trial jury. Now, the majority sees those comments as an inconsequential attempt “to assist in obtaining a conviction.”
I would hold that the remarks of the bailiff to the jurors prejudiced the jury as a matter of law to prevent Forsyth from getting a fair second trial; that the bailiff’s statements are not covered by the decision of the United States Supreme Court in Oregon v. Kennedy, supra; and that under our state constitution the criminal proceedings against Forsyth in this case should now be dismissed on double jeopardy grounds.
No discussion appears in the majority opinion as to whether it is determining the case on federal or state grounds. Because, however, it relies on Oregon v. Kennedy in reaching its decision, I must assume that it regarded the case solely from the viewpoint of the federal constitution without any regard to our state constitution.
The following state constitutional provisions apply to Forsyth in this case:
“Right and justice shall be administered without sale, denial, or delay.” Art. II, Sec. 16.
“No person shall be deprived of life, liberty, or property without due process of law.” Art. II, Sec. 17.
“In all criminal prosecutions the accused shall have the right. . . *504 to meet the witnesses against him face to face; ... to have ... a speedy public trial by an impartial jury ...” Art. II, Sec. 24.
“. . . No person shall be again put in jeopardy for the same offense previously tried in any jurisdiction.” Art. II, Sec. 25.
“The right of trial by jury is secured to all and shall remain inviolate . . .” Art. II, Sec. 26.
Every one of those state constitutional rights have been taken from Forsyth by the State either through its jury tampering by the bailiff or by its denial of a speedy trial.
I have set out the state constitutional provisions above because I feel that our state constitution controls this case and because the majority opinion has not made any reference to the state constitution. The majority members apparently feel that double jeopardy rights under our state constitution are co-terminous with such rights under the federal constitution. This is evinced because the majority has tried to fit the decision in Oregon v. Kennedy, supra. As I hope to demonstrate, that case is not applicable here.
There is no United States Supreme Court decision directly determining the effect on a defendant’s right to fair trial when a bailiff has tampered with the jury in the defendant’s disfavor. We have no federal criteria that would guide us as to how the present United State Supreme Court would view double jeopardy under the facts of this case from the federal viewpoint. I sense that the United States Supreme Court is considerably less concerned about the constitutional rights of defendants than I am. I, therefore, confine myself in this dissent to an examination of this case from the viewpoint of our state constitution and statutes. If I advert in this opinion to federal decisions, it is only for the purpose of attempting to explain them, or to use the rationale of the federal decisions to buttress my opinion of the application of our state’s constitution.
There are Montana statutes that directly instruct a bailiff as to his duties when the jury is placed in his charge. When a jury is to view the premises, under Sec. 46-16-502, MCA, the jurors are conducted in a body under the custody of the sheriff or bailiff to view said place. The bailiff may not then communicate with them concerning any subject, for the statute provides:
“46-16-502. View of relevant place or property. When the court deems it proper that the jury view any place or personal property pertinent to the case, it will order the jury to be conducted in a body under the custody of the sheriff or bailiff to view said place or personal property in the presence of the defendant and his counsel. The *505 place or personal property will be shown them by a person appointed by the court for that purpose, and they may personally inspect the same. The sheriff or bailiff must be sworn to suffer no person to speak or otherwise communicate with the jury or to do so himself on any subject connected with the trial and to return them into the courtroom without unnecessary delay or at a specified time, as the court may direct.” (Emphasis added.)
The bailiff here violated that statute when he informed the jury that they must stay together because otherwise the defendant might get a retrial.
When the bailiff is in charge of the jury, the duty of the bailiff is statutorily clear:
“46-16-501. Conduct of jury during trial. (1) The jurors sworn to try an action may at any time before the submission of the case, in the discretion of the court, be permitted to separate or be kept in charge of a proper officer. The officer must be sworn to keep the jurors together until the next meeting of the court, to suffer no person to speak to them or communicate with them or to do so himself on any subject connected with the trial, and to return them into court at the next meeting thereof.
“(2) (a) The jury must also at each adjournment of the court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with anyone else on any subject connected with the trial or to form or express any opinion thereon until the cause is finally submitted to them.
“(b) In all cases appealed to the supreme court, it shall be conclusively deemed that the court or judge gave the proper admonition in accordance with the provision of subsection (2) (a) unless the record affirmatively shows to the contrary.”
Under Montana practice, each time that the jury is delivered to the charge of the bailiff, the bailiff takes an oath before the court, an oath that is couched in the language of the foregoing statutes, that he will obey those statutes when the jury is in his charge.
Without quaver, we can assert that the bailiff Bourne flagrantly violated his oath and the statutes in this case.
It is time now to examine Oregon v. Kennedy, the United States Supreme Court case upon which the majority members base their decision on double jeopardy in this case.
The U.S. Supreme Court decision in Kennedy can be summarized: when a defendant in a criminal case successfully moves for a mis *506 trial, he may invoke the bar of double jeopardy in a second effort to try him only if the conduct giving rise to the successful motion for a new trial was prosecutorial or judicial misconduct intended to provoke the defendant into moving for a mistrial.
Just for starters, we may note the distinguishing characteristics of this case from Oregon v. Kennedy. Here, the mistrial was the result of a hung jury, not one where the defendant moved for mistrial; secondly Oregon v. Kennedy discusses prosecutorial or judicial misconduct; here we have a case of bailiff misconduct.
In Oregon state court, Kennedy was tried for stealing an oriental rug. During the cross-examination of an expert on the value of the rug, the prosecutor asked the expert whether he had done business with the Kennedys. The expert answered that he had not. The prosecutor asked: “Is that because he is a crook?”
The trial judge granted defendant’s motion for a mistrial on the ground of prosecutorial misconduct.
The double jeopardy hearing in the trial court in Kennedy was to a judge different from the one who had granted the mistrial. The trial judge determined that while the prosecutorial questioning was “overreaching,” he did not find that the prosecutor intended to provoke the defendant into moving for a mistrial. Therefore, the trial judge denied the double jeopardy motion. The denial was appealed to the Oregon Court of Appeals.
In State v. Kennedy (1980), 49 Or.App. 415, 619 P.2d 948, rev. den. 290 Or. 551 (1981), the Oregon Court of Appeals held that double jeopardy applied under the United States Constitution and that the defendant could not be retried. The Court of Appeals based its decision on the proposition that the prosecutor was indeed “overreaching.” The Oregon Supreme Court, without comment, denied the state’s petition for a review of the decision of the Court of Appeals.
The case came before the United States Supreme Court on certiorari and was decided in Oregon v. Kennedy, supra. The U.S. Supreme Court decided that the Oregon Court of Appeals had acted on federal constitutional grounds and therefore the matter was properly reviewable in the Washington D.C. Court. It then reached a decision which I have summarized above, remanding the cause to the Oregon Court of Appeals to determine if in fact the prosecutor had “intended” to provoke the defendant into moving for a mistrial.
The Kennedy case returned to the Oregon Court of Appeals, reported in State v. Kennedy (1983), 61 Or.App. 469, 657 P.2d 717. *507 Because the trial court had found that the prosecutor’s question was not intentional, the Court of Appeals then reversed itself saying that double jeopardy was not a bar. The Court of Appeals assumed that the Oregon law concerning retrials after prosecutor-induced mistrials was identical and co-terminous with the view of the federal jeopardy clause expressed by the U.S. Supreme Court in Oregon v. Kennedy.
The matter came again before the Oregon Supreme Court in State v. Kennedy (1983), 295 Or. 260, 666 P.2d 1316. The Oregon Supreme Court decided that its law was not identical with the federal view of the double jeopardy clause in the facts pertaining to the prosecutorial misfeasance case, mainly because the Oregon Supreme Court recognized as difficult obstacles, proving “intent” on the part of the prosecutor, and the difficulty faced by trial courts in making decisions which could lead to the disbarment or other punishment of the prosecutors. The Oregon Supreme Court concluded that it would hold under its constitution and state law that double jeopardy applied if the prosecutorial conduct was so prejudicial to the defendant that it could not be cured by any means short of a mistrial, and if the official knew the conduct was improper and prejudicial and either intended or was indifferent to the resulting mistrial or reversal. The Oregon Supreme Court then went on to find that in the Kennedy case, it could not say that the official intended to provoke a mistrial, or that the prosecutor was indifferent to the result of his questioning and affirmed the Court of Appeals.
It should be apparent that Oregon v. Kennedy, in any of its phases, has no connection with bailiff tampering of a jury to aid the state, a completely different question.
Not discussed by the majority is another Oregon case which is directly in point. That case is Oregon v. Rathbun (1979), 287 Or. 421, 600 P.2d 392. The facts are so nearly parallel to the facts of the Forsyth case that they bear some recitation here.
Rathbun was charged with first degree robbery and the case was submitted to a jury which deliberated for a day and a half and then reported to the trial judge that it was at an impasse. Defendant’s motion for a mistrial was allowed. On the evening of the order granting mistrial, two of the jurors went to the district attorney and advised him about comments which had been made by the court’s bailiff to the jury during the recesses in the trial and during the deliberations. Six days later, in the presence of counsel the jurors *508 were individually interrogated by another judge concerning the bailiff’s conduct and its effect on the jurors.
The case reached the Oregon Supreme Court after the Court of Appeals reversed the District Court which had held that double jeopardy applied.
The Oregon Supreme Court first considered whether there was a causal relationship between the improper remarks of the bailiff and the inability of the jury to agree upon a verdict. During the interrogation, each and every juror had denied being influenced by the bailiff’s remarks. The Oregon Supreme Court determined that no court could attempt by some method of mind reading to know whether the bailiff’s conduct actually influenced the mental process of any of the jurors and held with respect to that situation it would assume, without proof, that there was a causal relationship between the misconduct and the mistrial. The Oregon Supreme Court determined that those cases applying to prosecutorial and judicial misconduct had no application here:
“We agree with the Court of Appeals that this is not a case in which the mistrial was ‘triggered by prosecutorial or judicial desire to harass the defendant or afford the prosecution a more favorable opportunity to convict.’ (Citing a case.) We further agree that this is a case of an officer of the court who, on her own, was guilty of improper conduct which caused the mistrial in question. We cannot agree that the want of prosecutorial and judicial misconduct leaves the case in the same situation in which jury contamination resulting from ordinary third party misconduct causes a mistrial and is, therefore, no bar to retrial.” 600 P.2d at 397.
The Oregon Supreme Court then held, under Oregon law (which is substantially similar to our state law):
“In the United States Supreme Court decisions cited by the parties concerning prosecutorial or judicial misconduct the misconduct was perpetrated for the very purpose of triggering a motion by the defendant for a mistrial. Here there is nothing to suggest the bailiff sought to cause a mistrial. We daresay that nothing was further from her mind than causing a hung jury by her prejudicial discourse. On the contrary, her apparent purpose, as appears from the motion judge’s findings, was to assist the state in securing a conviction.
“The misconduct by this bailiff is so abhorrent to the sense of justice that we find the same sanction is required to effectuate the constitutional command as in the case where the prosecutor or the judge intends to provoke a mistrial. The state put this officer of the *509 court in the position to wreak havoc and must bear the same burden as when its prosecutor or judge in like manner offends.” 600 P.2d at 398. (Emphasis supplied.)
The Oregon Supreme Court found it abhorrent to its sense of justice that a bailiff would attempt “to assist the state in securing a conviction.” The majority members of the Montana Supreme Court find such assistance permissible.
I would agree with the Oregon Court in Oregon v. Rathbun, and hold that in this case double jeopardy applied to prevent any further prosecution of Forsyth because of the bailiff’s misconduct.
Forsyth also charges in this case that he is entitled to double jeopardy on the grounds of prosecutorial misfeasance. The majority members have dismissed that charge without any discussion of either state law or the exception carved out in the United States Supreme Court under Oregon v. Kennedy, supra. I will not belabor the point, since I have already determined, for my purposes that double jeopardy ought to apply because of the bailiff’s misconduct.
Turning now to the speedy trial issue, I disagree with the majority holding that a defendant must wait until after trial before he can have an appellate review of a speedy trial issue. Such a holding means that in all cases, no matter how long the trial has been delayed, the defendant has no recourse to an adverse decision on his right to speedy trial in the district court until the trial which has been denied him speedily has occurred.
In this case, two and a half years have now elapsed since the second trial of Forsyth. Much, if not all of the delay is attributable to the State both because it has resolutely refused to provide him with the tools of his defense, and resolutely determined to try him again in Flathead County, a site where it has already been determined that he could not receive a fair trial.
Again, the reliance of the majority members on the federal decision of United States v. MacDonald (1978), 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18, relating to speedy trial is misplaced. The MacDonald case is careful to distinguish a speedy trial issue from a double jeopardy issue. It made that distinction because under Abney v. United States, supra, denial of a double jeopardy claim is a full and final resolution of that issue separate and apart from a trial and under federal practice there is a right of review of such a denial. There is no right of review of a denial by a federal district court of a speedy trial claim because the speedy trial issue is “not sufficiently independent of the outcome of the trial to warrant pretrial appellate re *510 view.” In other words, under federal practice, there is no provision for an appeal from a federal district court to a higher Court of Appeals of a speedy trial issue, before the trial actually occurs.
That is not the case under our law. Our constitutional provision for supervisory control allows this Court to intervene in interlocutory manner in cases pending in the district courts when the district court, though acting in jurisdiction, is nevertheless committing error.
If the interest of this Court cannot be aroused when faced with a 2*4 year delay in trial, especially when most of the reasons for the delay exist in the records of our Court, there is little hope that such interest will be aroused after the next trial, if Forsyth is convicted.
Finally, with respect to the issue of change of venue, the majority decides that issue without any reference to Section 46-13-203, MCA, the statute controlling the power of the courts to change the place of trial.
That section provides in pertinent part:
“If the court determines that there exists in the county in which the prosecution is pending such prejudice that a fair trial cannot be had, it shall:
“(a) transfer the cause to any other court of competent jurisdiction in any county in which a fair trial may be had;
“(b) direct that a jury be selected in any county where a fair trial may be had and then returned to the county where the prosecution is pending to try the case; or
“(c) take any other action designed to insure that a fair trial may be had.” (Emphasis supplied.)
Section 46-13-203, MCA, defines the power of the district court to change the place of trial in a criminal case. In this case, the prosecution of Forsyth was pending in Lake County. The District Court has never determined that there existed in Lake County such prejudice that a fair trial could not be had there. Therefore, the district court had no power to move the venue of the trial from Lake County. The reasons that the majority members do not discuss Section 46-13-203 is understandable. Under the statute, it cannot be explained where the District Court got the authority to change the place of trial here.
Forsyth may well be guilty of killing his wife, or plotting to kill her. The headstrong determination of the bailiffs, the District Court, the prosecution and this Court to convict him at whatever cost to constitutional rights, to statutory directions, or to commonly accepted *511 notions of fair trial make his further prosecution unacceptable to me. I would order his prosecution dismissed.
MR. JUSTICE HUNT concurs with the foregoing dissent.