Argued and submitted April 6, affirmed June 9, 1982

# GALE,
*Appellant,*
*v.*
# DEPARTMENT OF REVENUE,
*Respondent.*

(TC 1559, SC 28078)

646 P2d 27

Carlisle B. Roberts, Judge.

Thomas D. Kershaw, Jr., Klamath Falls, argued the cause and filed briefs for appellant.

Ira W. Jones, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

PETERSON, J.

## PETERSON, J.

Under ORS 310.630 *et seq.*, medium and low income homeowners and renters are entitled to a refund of a portion of the real property taxes paid upon the dwelling they occupy. ORS 310.640(3) provides that the claimant's status as an owner or renter "shall be determined as of December 31 of the calendar year for which the claim is filed." The plaintiff in this case sold her home in October, 1977, and she claims entitlement to a pro rata portion of the owner refund to which she would have been entitled had she been an owner on December 31, 1977. She claims that the legislation impermissibly discriminates between homeowners who owned their homestead on December 31 of the tax year and homeowners who did not, in violation of the Equal Protection Clause of the Constitution of the United States.[1] She makes no claim under any provision of the Oregon Constitution.

The plaintiff herein owned and resided in a house in Philomath, Oregon. She sold the house in October of 1977, and moved out. Even though she did not own the house on December 31, 1977, she filed for and received an owner's refund under ORS 310.640. The Department of Revenue subsequently issued an order and ruling disallowing the refund on the grounds that she did not own the house on December 31 of the year for which the claim was filed.

Following an administrative appeal, the Department seized the plaintiff's 1981 tax refund and threatened further collection action. Plaintiff filed a complaint in the Tax Court seeking declaratory and injunctive relief.

The Department of Revenue moved to dismiss the complaint for failure to state facts sufficient to constitute a claim, ORCP 21A(8). The Tax Court granted the motion. Taxpayer appealed to this court. ORS 305.445. We affirm.

---

[1] The Fourteenth Amendment to the Constitution of the United States provides:

"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The refund program creates two categories of eligible taxpayers, renters and homeowners. In order to qualify, taxpayer had to be either a homeowner[2] or a renter "as of December 31 of the calendar year for which the claim is filed." ORS 310.640(3) (1977 Replacement Part). Taxpayer makes no claim that she was a renter as of December 31, 1977, and her complaint shows that she was not a homeowner as of December 31, 1977. Her claim is that the statutes violate the Equal Protection Clause of the Fourteenth Amendment. She argues:

> "* * * [I]t seems apparent that the purpose of the tax relief statutes is to refund to people who pay taxes a certain amount of those taxes, the amount depending on need. There is nothing improper about that. Is ORS 310.640(3), then, reasonably calculated to help achieve that end? It is not. In the case of people like this plaintiff, it does the opposite. Such people may pay most or all of the taxes and still not be entitled to any relief. Others may qualify for the full amount of the refund while paying little or none of the tax. Legislative acts having no tendency to achieve the legislative purpose have been invalidated when they act to discriminate against one group of people. * * * Here the group disadvantaged consists of persons who pay property taxes but do not qualify for tax relief solely because of the requirement of ORS 310.640(3). It is a well established principle that when government gives a benefit, equal protection requires it to be given without unreasonable discrimination."

The plaintiff is not critical of the differentiation of homeowners and renters. She criticizes the distinction between (1) homeowners who paid taxes upon their homestead and were an owner of the homestead as of December 31 of the calendar year for which the claim is filed, and (2) homeowners who paid taxes upon their homestead but were no longer an owner of the homestead as of December 31 of the calendar year for which the claim is filed. She asserts that an impermissible discrimination exists because taxpayers who own their homestead on December 31 are eligible for tax relief while a taxpayer who sold the home

_____

[2] The term "homeowner" was not defined in the 1977 statutes. The homeowner refund was limited to property taxes attributable to the taxpayer's principal residence. ORS 310.630(5) and ORS 310.640(1)(a) (1977 Replacement Parts).

on December 29 or 30 is not. We find no impermissible classification.

## THE HOMEOWNER REFUND STATUTES DO NOT VIOLATE THE FOURTEENTH AMENDMENT

Our analysis is directed to the plaintiff's claim that the failure to allow the plaintiff a pro rata refund impermissibly discriminates against her in violation of the Equal Protection Clause of the Fourteenth Amendment.[3] There can be no question that the legislation distinguishes between owners who own their homes on December 31 of the calendar year and those who do not. But the fact that the law provides for different treatment for different people does not compel the conclusion that equal protection does not exist. The equal protection guarantee is that persons who are similarly situated obtain equal treatment. Here, the law classifies persons for different benefits, as determined by their status on December 31 of the calendar year. The inquiry is: Does the classification between persons who owned their homestead on December 31 and those who did not bear a rational relationship to whatever end or ends the statute may seek to achieve? *Vance v. Bradley,* 440 US 93, 97, 99 S Ct 939, 59 L Ed 2d 171 (1979); *Dandridge v. Williams,* 397 US 471, 485-486, 90 S Ct 1153, 25 L Ed 2d 491 (1970).

The Supreme Court's "rational basis" test requires us, first, to examine the objectives of the statutes and, second, to analyze whether the classification rationally furthers achievement of those objectives. Although it is possible to infer the basis for the statutory requirement that the status of the claimant "be determined as of December 31 of the calendar year for which the claim is filed," we need not speculate. The legislative history makes it clear why the last sentence of ORS 310.640(3) was added to the statute in 1977.

The homeowner's relief law was first enacted in 1971. Its goal was to reduce the homeowner's real property

---

[3] *State v. Clark,* 291 Or 231, 630 P2d 810, *cert den.,* 454 US 1084, 102 S Ct 640, 70 L Ed 2d 619 (1981); *Jarvill v. City of Eugene,* 289 Or 157, 613 P2d 1 (1980); *Tharalson v. State Dept. of Rev.,* 281 Or 9, 573 P2d 298 (1978). Had a claim been made under Art I, § 20, of the Oregon Constitution, we would first consider that claim. *Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981).

tax burden. The plan was simple: All homeowners were eligible for some tax relief, but the relief was graduated. The less income, the more potential tax relief. The maximum refund was $400; the minimum, to persons with household income exceeding $8,000, was $100. ORS 310.640(4) then provided (Or Laws 1971, ch 747, § 3):

> "The property tax relief granted under this section applies to property taxes levied in the calendar year immediately preceding the year in which the claim is filed."

In 1973, the statute was amended. Or Laws 1973, ch 752. Provision was made for refunds to renters as well as homeowners, dependent upon the income of the renter. Maximum benefits to homeowners and renters, respectively, were $490 and $245. Persons with incomes of $20,000 or over were not eligible. ORS 310.640(4) was renumbered ORS 310.640(3) and modified to read as follows (Or Laws 1973, ch 752, § 2):

> "The property tax refund granted under this section applies to property taxes levied or rent constituting property taxes paid in the calendar year for which the claim is filed."

In November, 1973, the Department of Revenue promulgated detailed rules implementing the tax refund program. OAR 150-310.640 provided, in part:

> "A taxpayer's status on the last day of the calendar year for which the claim is filed shall determine his status as a homeowner or renter. A taxpayer may file only one claim. If the claim is for a home owned on December 31, the refund is computed on the tax levied on that home for the current tax year. If the claim is for a homestead rented on December 31, the refund is computed on the total net rent paid during the calendar year. * * *"

The 1975 legislature made minor revisions to the program. Or Laws 1975, chs 616 and 734. In 1977, substantial changes were made. Or Laws 1977, chapters 90 and 841. Provisions were made for rental assistance, in addition to the existing provisions for rental refund. The amount of maximum and minimum owner and renter refunds was raised, and the income eligibility requirements were lowered. ORS 310.640(3) was amended to include, in its last sentence, the gist of what had previously been the first

sentence of OAR 150-310.640. As amended in 1977, ORS 310.640(3) read (Or Laws 1977, ch 841, § 3):

> "The property tax refund granted under this section applies to property taxes levied or rent constituting property taxes paid in the calendar year for which the claim is filed. Status as an owner or renter shall be determined as of December 31 of the calendar year for which the claim is filed."

From 1973 on, provision was also made for auditing and adjusting claims. ORS 310.657(2) (1973 Replacement Part) provided:

> "The department shall audit or examine the claim and shall adjust the claim upward or shall allow or deny the claim in whole or in part. * * *"

ORS 310.657 was amended in 1977 to make provision for consideration of the new rental assistance program. As amended, ORS 310.657(2) provided:

> "The department shall audit or examine the claim and:
>
> "(a) If it appears that the taxpayer is eligible for rental assistance, shall consider the claim as a claim for rental assistance and if the renter refund for which the taxpayer is eligible is not greater in amount than the rental assistance, shall adjust the claim for rental assistance upward or shall allow or deny the claim in whole or in part; and
>
> "(b) If the taxpayer is eligible for owner refund, or is not eligible for rental assistance, or if the amount of rental assistance is less than the renter refund for which the taxpayer is eligible, shall consider the claim a claim for owner or renter tax refund and shall adjust the claim upward or shall allow or deny the claim in whole or in part."

Prior to 1977, the Department of Revenue had installed a sophisticated electronic system to record the data which was necessary to the implementation and operation of the program. The 1977 legislative history reveals that the question whether provision should be made for pro rata refunds to owners and renters whose status was either homeowner for part of a year, or renter for part of a year, or homeowner and renter for part of a year was discussed and rejected. The hearings reveal that the difficulty of administering the programs would be increased

immeasurably if renters and homeowners would be entitled to pro rata payments. For example, if a claimant were an owner and a renter in the same year, an apportionment of tax and rent would need to be made. In addition, an equivalent apportionment of income during each period of time would have to be made. The hearings also reveal that the cost of administration would be increased substantially.

With the purpose of the legislation in mind, and the legislative history before us, we must consider whether the classification is reasonable and related to the purpose of the legislation.

Classification is primarily a legislative problem. The mere fact that the classification "is not made with mathematical nicety or because in practice it results in some inequality" is not a basis for holding that a law violates the equal protection clause. *U.S. Railroad Retirement Bd. v. Fritz,* 449 US 166, 175, 101 S Ct 453, 66 L Ed 2d 368 (1980). Although the Supreme Court of the United States often refers to the legislative distinction of those who are from those who are not covered by a law as the creation of "classes," what is really involved is the drawing of a line separating eligible persons from ineligible persons. As we observed in *State v. Clark,* 291 Or 231, 240, 630 P2d 810, *cert den.,* 454 US 1084, 102 S Ct 640, 70 L Ed 2d 619 (1981), any time that a law determines a "class" with reference to a date, the inevitable result is that the law "classifies" persons by virtue of those who qualify and those who do not.[4]

---

[4] Note this comment, relative to the "classification" under Art I, § 20, of the Oregon Constitution:

"The terms 'class' and 'classification' are invoked sometimes to mean whatever distinction is created by the challenged law itself and sometimes to refer to a law's disparate treatment of persons or groups by virtue of characteristics which they have apart from the law in question. Familiar examples of the latter kind of 'class' are personal characteristics such as sex, ethnic background, legitimacy, past or present residency or military service. On the other hand, every law itself can be said to 'classify' what it covers from what it excludes. For instance, the rule of this court that limits the time for filing a petition for review (Rule 10.05) 'classifies' persons by offering the 'privilege' of review to those who file within 30 days and denying it to those who file later. Similarly, a law that licenses opticians and optometrists to perform different functions, *see Williamson v. Lee Optical,* 348 US 483, 75 S Ct 461, 99 L Ed 2d 563 (1955), does not grant or deny privileges to classes of

The Supreme Court of the United States was faced with a similar problem in *U.S. Railroad Retirement Bd. v. Fritz, supra.* In that case, Congress restructured the railroad retirement system which had included provisions whereby a person who worked for both railroad and nonrailroad employers and who qualified for railroad retirement benefits and social security benefits received benefits under both systems. These benefits, in the opinion, were referred to as "windfall benefits." Congress decided to eliminate the windfall benefits. Their elimination required Congress to determine which employees currently in railroad service would be deemed to have a "vested" right to such windfall benefits. Such benefits were retained for some railroad employees who were employed in railroad service in 1974 or had a "current connection" with the railroad industry as of December 31, 1974. Some railroad employees who were "divested" contended that it was irrational for Congress to distinguish between employees simply on the basis of whether they had a "current connection" with the railroad industry as of the changeover date, December 31, 1974.

The Supreme Court held that the classification did not deny the plaintiff class equal protection of the laws. As to the process of line drawing, the court noted:

> "* * * Where, as here, there are plausible reasons for Congress' action, our inquiry is at an end. It is, of course, 'constitutionally irrelevant whether this reasoning in fact underlay the legislative decision' * * * because this court has never insisted that a legislative body articulate its reasons for enacting a statute. This is particularly true where the legislature must necessarily engage in a process of line drawing. The 'task of classifying persons for. . . benefits inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line.' *Mathews v. Diaz,* 426 US 67, 83-84, 48 L Ed 2d 478, 96 S Ct 1883 (1970), and the fact

persons whose characteristics are those of 'opticians' and 'optometrists'; rather, the law creates these classes by the licensing scheme itself. Attacks on such laws as 'class legislation' therefore tend to be circular and, as the above quotations from early decisions show, have generally been rejected whenever the law leaves it open to anyone to bring himself or herself within the favored class on equal terms. * * *" *State v. Clark,* 291 Or at 240-241, 630 P2d 810, *cert den.,* 454 US 1084, 102 S Ct 640, 70 L Ed 2d 619 (1981).

the line might have been drawn differently at some points is a matter for legislative, rather than judicial consideration."[5] *U.S. Railroad Retirement Bd. v. Fritz, supra* at 179.

See also *Huckaba v. Johnson,* 281 Or 23, 573 P2d 305 (1978).[6]

■ ■ As stated previously, the legislative history shows that the legislature considered and rejected the proration of refunds because administration would be much more complex and burdensome, and the cost more substantial. In nonsuspect classifications for taxation purposes, matters pertaining to cost and administrative difficulty are relevant to an equal protection inquiry. In *School Dist. No. 12 v. Wasco County,* 270 Or 622, 529 P2d 386 (1974), a statute

---

[5] Note this statement from *Mathews v. Diaz,* 426 US 67, 83-84, 96 S Ct 1883, 48 L Ed 2d 478, 492 (1976), which involved the constitutionality of provisions of the Social Security Act denying eligibility to aliens, age 65 or older, unless they had been admitted for permanent residence and also has resided in the country for at least five years:

"* * * [T]he differences between the eligible and the ineligible are differences in degree rather than differences in the character of their respective claims. When this kind of policy choice must be made, we are especially reluctant to question the exercise of congressional judgment. In this case, since appellees have not identified a principled basis for prescribing a different standard than the one selected by Congress, they have, in effect, merely invited us to substitute our judgment for that of Congress in deciding which aliens shall be eligible to participate in the supplementary insurance program on the same conditions as citizens. We decline the invitation." (Footnote omitted.)

[6] *Huckaba v. Johnson,* 281 Or 23, 573 P2d 305 (1978), involved the constitutionality of portions of the Personal Income Tax Act which allowed an exclusion from taxable income for payments received under retirement systems established by the United States, but which denied the exclusion in the case of a military retiree until age 65. The contention was made that this differentiation denied equal protection to military retirees under age 65, when compared with other federal retirees not drawing military retirement. This court upheld the different treatment, saying:

"What is required in assessing a constitutional challenge to classification for tax benefit is a review of the grounds for the classification to determine if it rests upon a rational basis. The legislature may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citations omitted.] It, however, is not sufficient to merely point out differences between the groups of taxpayers for divergent treatment. The differences justifying the attempted classification must bear a reasonable relationship to the legislative purpose. The legislative power to create a classification implies the authority to subclassify persons included in the general class if there is a rational basis for making this further distinction. * * *" 281 Or at 26.

provided that ad valorem tax refunds should be paid by the county, even though the tax was levied by and for the benefit of a single taxing school district in the county. This statute was upheld against the plaintiffs' assertion that the statute violated plaintiffs' rights under both the Equal Protection Clause of the Fourteenth Amendment and Art I, § 20, of the Oregon Constitution. As to administrative efficiency and cost, this statement is pertinent:

> "There is no question concerning a rational relationship between the classifications and a legitimate state interest. The doing away with expensive and time-consuming book-keeping and the mitigation of the shock to a few tax levying agencies in situations where a large refund is involved are legitimate state interests which bear a logical relation to the legislatively created classifications. Either one or both of these reasons are adequate to foreclose claims of special favors or of inequality of treatment of constitutional consequence.

> "Plaintiffs in effect contend that since the statute results in an unequal distribution of burdens and privileges, they have been denied equal protection of the law. However, plaintiffs cannot base their claim of unequal protection solely upon a showing of inequitable results. The issue is whether the statute applies a wholly irrational classification scheme, not whether the provision harbors inequities. A mere showing of discriminatory treatment is insufficient to establish an injury of constitutional proportion." 270 Or at 629-630.

Finally, it is appropriate to point out that it was within the power of the plaintiff to bring herself within the class of eligible persons simply by deferring the sale of her house. Whether this was a practical economic decision was for the plaintiff to decide. Many decisions are made with a view to eligibility for benefits or to tax liabilities which are determined by time.

The difficulties of administration and the additional cost of operation of a plan for proration of refunds are substantial reasons supporting the legislative decision to draw the line at December 31 of each calendar year. The scheme is rational, understandable and workable. There is no equal protection constitutional infirmity.

The judgment of the Tax Court is affirmed.